UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALVARO G. M., | ) | No. CV 21-04438 AGR |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Plaintiff[1] filed this action on May 27, 2021.  The parties filed a Joint Stipulation that addressed the disputed issues.  The court has taken the matter under submission without oral argument.[2]

Having reviewed the entire file, the court reverses the decision of the Commissioner and remands for further proceedings at step five of the sequential analysis.

---

[1]  Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge.  (Dkt. Nos. 10, 12.)

**I.**

## **PROCEDURAL BACKGROUND**

On May 17, 2019, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income benefits.  Both applications alleged an onset date of August 6, 2017.  Administrative Record ("AR") 15.  The applications were denied initially and upon reconsideration.  AR 15, 77-78, 97-98.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  On August 14, 2020, the ALJ conducted a hearing at which Plaintiff and a vocational expert testified.  AR 28-60.  On November 4, 2020, the ALJ issued a decision denying benefits.  AR 12-23.  On April 8, 2021, the Appeals Council denied review.  AR 1-5.  This action followed.

**II.**

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits.  *Smith v. Berryhill*, 139 S. Ct. 1765, 1774 (2019).  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam).

"Substantial evidence" means "'more than a mere scintilla.'"  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).  "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (citation omitted).  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016).

**III.**

**DISCUSSION**

### A.   Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (citation and quotation marks omitted).

### B.   The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements through December 31, 2020.  AR 18.  Following the five-step sequential analysis applicable to disability determinations, *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[3] the ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the lumbar spine and residual effects of degenerative osteoarthritis of the right shoulder, status post arthroscopic subacromial decompression in December 2016.  AR 18. Plaintiff has the residual functional capacity to perform light work except he can frequently climb ramps and stairs; frequently stoop, kneel, crouch and crawl; and occasionally reach overhead bilaterally.  AR 20.

The ALJ concluded that Plaintiff can perform his past relevant work as a gas servicer (DOT 637.261-018).  Plaintiff, therefore, was not under a disability from August 6, 2017 through the date of the ALJ's decision on November 4, 2020.  AR 23.

---

[3]  The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsbury*, 468 F.3d at 1114.

1        **C.      Past Relevant Work**

2        The RFC assessment measures the claimant's capacity to engage in basic work

3   activities.  *Bowen v. New York*, 476 U.S. 467, 471 (1986).  The RFC is a determination

4   of "'the most [the claimant] can still do despite [the claimant's] limitations.'"  *Treichler v.*

5   *Comm'r*, 775 F.3d 1090, 1097 (9th Cir. 2014) (citation omitted).

6        "At step four, a claimant has the burden to prove that he cannot perform his past

7   relevant work 'either as actually performed or as generally performed in the national

8   economy.'"  *Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016) (citation omitted).  The

9   ALJ "may not classify a past occupation 'according to the least demanding function.'"  *Id.*

10  (citation omitted).  "An ALJ may ask a VE to provide testimony as to the physical and

11  mental demands of a claimant's past relevant work to assess whether the claimant is

12  still able to perform such past relevant work."  *White v. Kijakazi*, 2022 U.S. App. LEXIS

13  21838, *15 (9th Cir. Aug. 8, 2022).

14       Relying on the VE's testimony, the ALJ found that Plaintiff could perform his past

15  relevant work as a gas servicer as actually performed at the light level but not as

16  generally performed at the medium level.  AR 23, 57.

17       Plaintiff argues that the ALJ erred because he did not actually perform his past

18  relevant work at the light level according to his hearing testimony and written statement.

19  The vocational expert attended the hearing.  AR 30-31.  Plaintiff testified that he had

20  worked as a service technician to repair cooking equipment in restaurants and fast food

21  locations.  AR 36, 43.  In response to a question from the ALJ, the VE testified that

22  Plaintiff worked as a gas servicer, DOT 637.261-018, rated as medium work "but his

23  description in 4E puts it at light."  AR 45.

24       The ALJ then asked Plaintiff why he would not be able to do that work "as you did

25  that job?"  AR 49.  Plaintiff responded that he could not do his past job for three

26  reasons.  First, "you got to use wrenches and take heavy bolts and nuts and you got to

27  sometimes carry some heavy stuff like 50 pounds up from the truck or whatever you're

28  working on."  AR 49-50.  Second, he could not turn bolts, nuts, or screwdrivers given

4

that he cannot even open a bottle of Gatorade without using a channel lock.  Third, "you got to be on your knees most of the time because of the fryer.  You open the door and you're on your knees.  I'd spend all of the days on my knees actually."  AR 50.

The ALJ asked the VE to assume a claimant limited to, among other things, light work and frequent kneeling.  AR 56-57.  The ALJ asked whether that claimant could perform the gas servicer job as actually performed but not generally performed.  The VE answered "Yes."  AR 57.

The ALJ found that the VE's testimony "is consistent with the claimant's testimony at the hearing and his statement of the physical requirements of this work at [AR 230]."  AR 23.  The ALJ's finding is unsupported by the evidence.  The VE's testimony is clearly inconsistent with Plaintiff's hearing testimony, which described a gas servicer job at a medium level with constant kneeling.  The Commissioner argues that the ALJ could have relied solely on Plaintiff's written statement (AR 230) and discounted the hearing testimony.  The ALJ expressly found the VE's testimony to be consistent with Plaintiff's hearing testimony and written statement, however, and the court is "constrained to review the reasons the ALJ asserts."  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).  The Commissioner further argues that Plaintiff waived this argument by failing to cross-examine the VE on this subject.  The court finds no waiver.  The VE's testimony was complete, and the error was not apparent until the ALJ issued her findings.  Accordingly, this matter must be reminded for further proceedings at step five of the sequential analysis.

**D.   <u>Subjective Allegations</u>**

"'An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (citation omitted).  "At this step, the medical evidence need not corroborate the severity of the

alleged symptoms; the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms." *Id.* "Then, provided 'there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* at 1112 (citation omitted). The Ninth Circuit requires that the ALJ "'specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.'" *Id.* (citation omitted). "'[A]n ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking.'" *Treichler v. Comm'r*, 775 F.3d 1090, 1106 (9th Cir. 2014) (citation omitted).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but concluded that his statements about the intensity, persistence, and limiting effects "are not entirely consistent with the medical evidence and other evidence in the record" and are internally inconsistent. AR 22.

The ALJ noted that Plaintiff does have medically determinable impairments. On April 12, 2018, Plaintiff reported daily chronic right shoulder pain and stiffness. AR 305. On May 8, 2018, an MRI of the right shoulder indicated postsurgical changes of the prior supraspinatus tendon repair, mild articular surface fraying of the tendon construct without recurrent full-thickness tendon defect; moderate infraspinatus tendinosis with low-grade partial-thickness bursal surface tear/fraying anteriorly, moderate subscapularis tendinosis; posterior labral tear associated with mild to moderate degenerative changes of the glenohumeral joint posteriorly; moderate osteoarthrosis of the acromioclavicular joint, prior acromioplasty; and mild to moderate subacromial subdeltoid bursal fluid. AR 451.

On June 5, 2018, Plaintiff reported chronic neck pain and stiffness. He denied radiation, numbness or tingling in his hands. On examination, he had paraspinous tenderness in the neck. AR 301-02. Cervical spine imaging showed no acute findings

other than cervical straightening that may be due to spasm.  AR 318.  On July 16, 2018, Plaintiff reported shoulder pain and was scheduled for surgery within one month.  AR 299.  On September 17 and November 27, 2018, Plaintiff was seen for routine follow-up and denied current symptoms.  Physical examinations were within normal limits.  The orthopedic surgeon had prescribed physical therapy.  AR 295-96, 297-98.

On February 11, 2019, Plaintiff reported increasing low back pain and stiffness over the last two months and that current pain medications are not working well.  The physician ordered an x-ray of the lumbar spine and discussed proper lifting techniques.  AR 293-94.

On August 29, 2019, Plaintiff reported worsening and severe low back pain radiating down both legs.  AR 384.  On examination, Plaintiff had lumbar paraspinous tenderness and negative straight leg raising.  The physician ordered imaging.  AR 385.  On September 27, 2019, an MRI of the lumbar spine indicated mild levoscoliosis; posterior disc bulges measuring 2-3 mm at the L3-4 and L4-5 levels; degenerative changes of the facet joints at L3-4 and L5-6; and anterior disc bulge measuring 2-3 mm at the L2-3, L3-4, L4-5 and L5-S1 levels.  AR 448-49, 453.

Plaintiff was treated at Synovation with caudal epidural steroid injections on April 1, June 7, and October 9, 2019 (AR 401, 403, 405) and left sacroiliac joint injections on April 10 and June 23, 2020 (AR 397, 399).  The Synovation records cover the period March 2019 – May 2020.  On March 21, 2019, Plaintiff was referred for low back pain radiating down to buttock and bilateral legs, and shoulder pain.  Plaintiff reported that the pain was aggravated by prolonged standing and activities.  AR 393.  On examination, Plaintiff had a stable and non-antalgic gait, tenderness to palpation of lumbar paraspinals, reduced range of motion, positive straight leg raising bilaterally, positive facet loading, 5/5 motor strength, and intact sensation.  AR 395.  Subsequent records repeat these complaints and findings.  AR 407, 410, 412, 414-15, 417, 419-20, 422, 424-25, 427, 429-30, 432, 434, 436, 438, 440, 442, 444, 446.  On April 30, 2019, Plaintiff reported that the injection was therapeutic.  AR 443-44.  On June 26, 2019,

Plaintiff reported that the most recent injection was minimally therapeutic.  A TENS unit was authorized.  AR 439.  On July 25, 2019, Plaintiff reported that the TENS unit was therapeutic but he started having more back pain two weeks ago.  AR 432, 435.  After the September 2019 MRI, Plaintiff reported that the TENS unit, injections and medications were therapeutic.  A lumbar corset brace for his low back was denied.  AR 423, 425.  On January 7, 2020, Plaintiff complained of right-side mid back pain for the past month.  He was continued on the same treatment plan.  AR 418, 420-21.  On March 20, 2020, Plaintiff reported that he fell a month earlier and had left buttock and left elbow pain.  He was scheduled for left sacroiliac joint injection and otherwise continued on the same treatment plan.  AR 413, 416.  On May 21, 2020, Plaintiff reported that the injection was therapeutic and walking alleviated the pain.  AR 408.

Otherwise, the ALJ's findings of inconsistencies within Plaintiff's complaints, and between his complaints and activities, are supported by substantial evidence.  *See Berry v. Astrue*, 622 F.3d 1228, 1234-35 (9th Cir. 2010).  The ALJ noted that Plaintiff complained of numbness in his fingers, but medical records after the alleged onset date indicated denial of radiation, numbness or tingling in the hands.  AR 18, 301-02.  Plaintiff testified that he had chronic neck pain, but pain management treatment records in 2020 were devoid of complaints of neck pain.  AR 19, 38.  In his August 2019 statement, Plaintiff stated that he drove a car with an automatic transmission but, at the hearing, he testified that he did not drive and had not had a car in four or five years.  AR 21-22, 51, 225.  Plaintiff testified that he could lift maybe five pounds, but in his August 2019 statement acknowledged that he does grocery shopping once per week and carries a couple of grocery bags into his home.  AR 21-22, 51, 225.  In a written statement, Plaintiff's representative claimed that shaving, if it took too long, would cause finger spasms out of control, but Plaintiff testified that he took care of his son, who has cerebral palsy, three hours per day including shaving him, cutting his hair, preparing meals and doing laundry.  AR 40, 55, 258.  Moreover, Plaintiff testified that when he sits, "that's when I don't really have pain."  AR 50.  This statement undermines Plaintiff's

testimony that he can sit only 30-40 minutes.  Plaintiff's self-reported activities suggest a greater functional capacity than Plaintiff claimed in his testimony.  *See Berry*, 622 F.3d at 1235.  Plaintiff has not shown error.

## IV.

## <u>ORDER</u>

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and this matter is remanded for further proceedings at step five of the sequential analysis.

DATED: September 16, 2022

_____
ALICIA G. ROSENBERG
United States Magistrate Judge